IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ESTATE OF BYRON WILLIAMS,<br><br>    Plaintiff,<br>v.<br><br>SALT LAKE COUNTY, WEST VALLEY CITY, and DOES 1–20,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS**<br><br>Case No. 2:19-cv-00128<br><br>District Judge Jill N. Parrish |

Before the court are two Motions to Dismiss (the "Motions") filed by defendants Salt Lake County and West Valley City (collectively, "Defendants"). *See* ECF Nos. 12, 13. The Estate of Byron Williams ("Plaintiff") filed this Section 1983 action on February 26, 2019, alleging that Defendants violated Plaintiff's constitutional rights because they were "deliberately indifferent to [Mr. Williams's] needs by failing to ensure he was treated for life threatening injuries" caused by violence from a third party. *See* Compl. ¶¶ 28–30. Defendants move to dismiss Plaintiff's Section 1983 claims,[1] arguing in pertinent part that Plaintiff has failed to state a claim upon which the court can grant relief. For the following reasons, the court grants the Defendants' Motions.

I.   BACKGROUND

This dispute involves the death of Byron Williams after government emergency services allegedly failed to timely render aid to Mr. Williams when he was shot by a private individual. Plaintiff alleges that on November 20, 2016, Mr. Williams had an altercation with Christopher

---

[1] Plaintiff concedes that its state law claims in Counts III, IV, and V are "unlikely to prevail" and appears to agree to their dismissal. ECF Nos. 19 at 6, 20 at 7; *see also* ECF No. 23 at 1 (Defendant West Valley City recognizing that Plaintiff has agreed to dismiss Counts III, IV, and V). Therefore, the court dismisses Counts III, IV, and V without prejudice and addresses only Counts I and II, the Plaintiff's federal civil rights claims under 42 U.S.C. § 1983.

1

James Bonds, which resulted in Mr. Bonds shooting Mr. Williams. *Id.* ¶¶ 14–16. An eyewitness to the shooting called 911 and requested that emergency services dispatch first responders to provide medical care for Mr. Williams. *Id.* ¶ 18. The eyewitness was placed on hold and disconnected from her first call, and she subsequently called 911 twice more before connecting with a 911 operator. *Id.* ¶ 19. Plaintiff alleges that the 911 operator inquired about Mr. Williams's race and the eyewitness stated that Mr. Williams was African American. *See id.* ¶¶ 20–21. Plaintiff asserts that it was "close to one-and-a-half hour[s]" after the 911 call when an ambulance arrived to where Mr. Williams lay injured. *Id.* ¶ 23. Plaintiff also alleges that upon arrival, the first responder medical personnel had "no sense of urgency" to care for Mr. Williams because "the responders were acting very nonchalantly" and "there were no emergency lights or sirens activated" when the ambulance arrived at the scene. *Id.* ¶ 24. Moreover, Plaintiff emphasizes that the first responders did not remove bystanders at the scene who "were just standing around." *Id.* ¶ 26. The first responders loaded Mr. Williams into the ambulance and, tragically, Mr. Williams died on his way to the hospital. *See id.* ¶ 23.

Plaintiff asserts that Defendants violated Mr. Williams constitutional rights by failing to timely provide medical services to him after the shooting. In Count I, Plaintiff pleads that Defendants violated Mr. Williams's "Fourteenth amendment rights against c[ruel] and unusual punishment." *Id.* at 5. Plaintiff contends that Defendants' alleged one-and-a-half-hour delay in providing "medical and emergency treatment for" Mr. Williams's injuries demonstrates that Defendants were "deliberately indifferent to Mr. Williams' needs." *Id.* ¶¶ 28, 30. Plaintiff also asserts that Defendants' delay represents "inactions based on racial discrimination" because "it can easily be inferred . . . [from] what transpired" and the 911 operator inquiring about Mr. Williams's race "that Mr. Williams would have been a higher priority for treatment had he been []

2

Caucasian." *Id.* ¶¶ 22, 25, 29. In Count II, Plaintiff pleads that this alleged constitutional violation occurred as a result of the municipalities' purported failure "to provide adequate policies, procedures or training to their employees" to avoid such violations. *Id.* ¶ 37. Plaintiff asserts that the municipalities' "failure to adequately train or supervise [their] subordinates" is "due to [their] deliberate indifference" to Mr. Williams's constitutional rights. *Id.* ¶ 36.

Among other arguments, Defendants urge the court to dismiss Plaintiff's Complaint because "[t]here is no Constitutional claim for a City not providing fast enough 911 services." ECF No. 13 at 6. Specifically, West Valley City argues that Plaintiff's "Constitutional cruel and unusual punishment claims fail because Mr. Williams was not in custody at the time of his death," *id.* at 4, and that the City "otherwise did not have a special relationship with Mr. Williams that would require the City to be responsible for his safety and well-being," ECF No. 23 at 3. The court agrees and dismisses Count I without prejudice because, as pled, Plaintiff has not adequately stated a claim for a violation of his Fourteenth Amendment rights.[2] As a consequence, the court also

---

[2] At several points, Plaintiff makes conclusory allegations that the Defendants' failure to timely care for Mr. Williams was because of race discrimination. *See, e.g.*, Compl. ¶¶ 22, 25, 29. However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, Plaintiff appears to only plead a substantive due process violation of the Fourteenth Amendment and does not plead a separate cause of action for a violation of Mr. Williams's Equal Protection Clause rights. Thus, the court does not consider Plaintiff's allegations of race discrimination as raising a separate cause of action for the court's consideration because "claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause." *Felders v. Bairett*, 885 F. Supp. 2d 1191, 1210 (D. Utah 2012) (quoting *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003)), *aff'd Felders ex rel. Smedley v. Malcom*, 755 F.3d 870 (10th Cir. 2014). The court notes, however, that "the right to equal protection may be violated even if the" Defendants did not violate Plaintiff's substantive due process rights, *see id.*, and other courts have applied strict scrutiny to alleged race discrimination in the provision of medical care, *see, e.g.*, *Mitchell v. Washington*, 818 F.3d 436, 444 (9th Cir. 2016) (ruling that "strict scrutiny applies to the use of race by a state actor in making a medical treatment decision").

3

dismisses Count II without prejudice because Plaintiff has not adequately stated a claim of an underlying constitutional violation to hold the municipalities liable in this case.

## II.     LEGAL STANDARD

Defendants move to dismiss Plaintiff's Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, the complaint must "state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), that "is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013). The court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003) (citation omitted).

## III.    ANALYSIS

Plaintiff alleges a violation of his substantive due process rights. The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST., amend. XIV, § 1. Beyond a procedural right to due process, the Fourteenth Amendment also contains a judicially recognized substantive due process component that protects an individual's life, liberty, and property against "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Plaintiffs can seek to remedy alleged violations of their substantive due process rights under 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected,

4

> any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Under Section 1983, certain municipalities are considered "persons" and subject to liability if the municipality's "policy or custom" caused an underlying constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). Such a policy or custom may be written or unwritten, and even a single decision by a municipal policymaker or single instance of unconstitutional conduct may represent a policy for purposes of municipal liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Thus, a municipality is liable under Section 1983 if it "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation" committed by its employees, "and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998) (citation omitted).

The Supreme Court in *DeShaney v. Winnebago County Department of Social Services* limited the reach of substantive due process protections by holding that the Fourteenth Amendment does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 489 U.S. 189, 196 (1989). In other words, "[a] state actor generally may not be held liable under the Fourteenth Amendment for harm a private individual intentionally or recklessly inflicts upon a victim." *Matthews v. Bergdorf*, 889 F.3d 1136, 1143 (10th Cir. 2018) (citing *Deshaney*, 489 U.S. at 197); *see also Hayes v. Garcia*, 123 F. App'x 858, 861 (10th Cir. 2005) (unpublished) (holding that "there is no general right to medical care" even "for people injured by state actors"). This is because in instances "[w]here private violence is responsible for the harm,

5

the state actor has not deprived the victim of any constitutional right; rather the private individual has deprived the victim of life, liberty, or property." *Bergdorf*, 889 F.3d at 1143.

The *Deshaney* Court recognized two exceptions to this general rule. First, government inaction may still violate a plaintiff's substantive due process rights if the government had an "affirmative duty" to the plaintiff based on "the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200. Second, government inaction may violate substantive due process if the government "played [a] part" in "render[ing] [the plaintiff] . . . more vulnerable to" a deprivation of life, liberty, or property. *Id.* at 201. As the Tenth Circuit summarized: "Where a private party inflicts harm upon a victim, a state actor incurs an antecedent constitutional duty to protect the victim if the complainant demonstrates either (1) the existence of a special custodial relationship between the State and victim, or (2) the state actor intentionally or recklessly created the danger that precipitated the deprivation." *Bergdorf*, 889 F.3d at 1143.

A. INDIVIDUAL OFFICER SUBSTANTIVE DUE PROCESS CLAIM

Plaintiff pleads that the individual defendants are liable under Section 1983 because "Defendants had a duty" to Mr. Williams "to provide timely medical and emergency treatment for conditions about which they knew or should have known." Compl. ¶ 28. Plaintiff further contends that because "the City [has] take[n] on the responsibility to provide a 911 service and first responder service, they do have an obligation to provide those in a timely manner." ECF No. 20 at 7. Accordingly, Plaintiff appears to argue only that Defendants are liable for their inaction and delay in rendering medical aid to Mr. Williams because of a duty they owed to him. Among other arguments, the West Valley City Defendant broadly asserts that "[t]here is no Constitutional claim for a City not providing fast enough 911 services." ECF No. 13 at 6. Although the court disagrees

with the Defendants' categorical argument,[3] the court agrees that Plaintiff has failed to plausibly state a claim that Defendants violated Mr. Williams's Fourteenth Amendment rights under the special relationship theory of substantive due process liability.

"A State's affirmative duty to protect an individual under the special relationship exception arises" only "from the limitation which the State has imposed on such individual's freedom to act on his or her own behalf." *Bergdorf*, 889 F.3d at 1145. "[I]f the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty, the state may thereby enter into a 'special relationship' during such restraint to protect that

---

[3] Plaintiff may have a cause of action to vindicate its substantive due process rights under the state-created danger doctrine. Under this exception to the general *DeShaney* rule, the government may be liable for its inaction if the "state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). "To establish a claim under the danger-creation theory, a plaintiff must show: (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking" *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014) (citation omitted). "There are also two 'preconditions' that the plaintiff must show: that the state actor engaged in affirmative conduct and that there was private violence." *Id.* (citation omitted). Some courts have ruled that, in situations where a plaintiff is injured with survivable wounds from private violence, state actors may incur liability if the plaintiff's condition turns fatal because the state's affirmative conduct caused substantial delays in rendering emergency aid. *See, e.g.*, *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (holding that "[i]mpeding access to medical care amounts to leaving a victim in a more dangerous situation" and may rise to a substantive due process violation); *Sanders v. Bd. of Cty. Comm'rs of Cty. of Jefferson, Colorado*, 192 F. Supp. 2d 1094, 1109–12 (D. Colo. 2001) (declining to dismiss a state-created danger claim involving an alleged three-hour delay in rendering medical aid); *Schieber v. City of Philadelphia*, No. CIV. A. 98-5648, 1999 WL 482310, at *4 (E.D. Pa. July 9, 1999) (declining to dismiss a state-created danger claim after concluding that "it was foreseeable that the officers' failure to intervene" and provide emergency aid after reports from neighbors about a woman in distress "created additional danger for [the plaintiff] from the increased risk of harm or delay in medical attention"); *cf. Ross v. United States*, 910 F.2d 1422, 1431 (7th Cir. 1990) (allowing recovery for injury resulting from state prevention of private rescue attempt). Because Plaintiff failed to plead facts or make arguments under this theory of substantive due process liability, the court does not consider it in ruling on these Motions to Dismiss.

individual from violent acts inflicted by others." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003) (citation omitted). "Absent involuntary restraint, however, no duty to protect arises under the special-relationship theory." *Id.* (citation omitted). The Supreme Court and Tenth Circuit have recognized a limited set of circumstances in which the state has formed a special relationship with a plaintiff giving rise to an affirmative duty to act. *See, e.g.*, *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983) (pretrial detainees); *Youngberg v. Romeo*, 457 U.S. 307 (1982) (involuntarily committed patients with mental health conditions); *Estelle v. Gamble*, 429 U.S. 97 (1976) (prisoners); *Yvonne L., By & Through Lewis v. New Mexico Dep't of Human Servs.*, 959 F.2d 883 (10th Cir. 1992) (children in foster care).

Plaintiff does not allege that any recognized special relationship exists in this case. Nor has Plaintiff alleged that Defendants had involuntarily restrained Mr. Williams in any other way. Rather, Plaintiff pleads that "Defendants had a duty to provide timely medical and emergency treatment for conditions about which they knew or should have known." Compl. ¶ 28. But mere "foreseeability cannot create an affirmative duty to protect when plaintiff remains unable to allege a custodial relationship." *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994 (10th Cir. 1994); *see also id.* at 995 ("Inaction by the state, in the face of a known danger is not enough to trigger . . . an affirmative duty to protect."). Thus, the special relationship theory of liability is inapplicable in this case because Plaintiff alleges no government-imposed involuntary restraint to create an affirmative duty between the government and Mr. Williams. Accordingly, Count I is dismissed without prejudice.[4]

---

[4] The court notes that a four-year statute of limitations applies to any future Section 1983 litigation based on the circumstances alleged to have occurred in this case. *See Parker v. Bourdon*, 800 F. App'x 654, 657 (10th Cir. 2020) (unpublished) (upholding the application of Utah's four-year statute of limitation in Section 1983 cases).

B. MUNICIPALITY SUBSTANTIVE DUE PROCESS CLAIM

Based on the dismissal of Plaintiff's individual liability claims in Count I, Plaintiff's municipal liability claims in Count II are also dismissed without prejudice. The court "will not hold a municipality 'liable for constitutional violations when there was no underlying constitutional violation by any of its officers.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002) (alterations omitted) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Because Plaintiff has failed to plausibly plead a violation of its substantive due process rights by individual officers under the special relationship theory of liability, the court cannot hold the municipality defendants liable for any alleged policy or custom related to a purported violation. Therefore, Count II is dismissed without prejudice.

## IV. ORDER

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 12, 13) are GRANTED and Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

Signed September 21, 2020

BY THE COURT:

_____
Jill N. Parrish
United States District Court Judge